## GULF, COLORADO & SANTA FE RY. v. EDDINS.

SUPREME COURT, GALVESTON TERM, 1884.

*Bills of Exceptions—Practice.*—There is no rule of practice which authorizes the filing of a bill of exceptions after the adjournment of court. On the contrary the rules require that they shall be filed in term time. The bills in this case are incorporated in a statement of facts filed under order of court, within ten days after adjournment. *Held,* that the bills cannot be entertained.

*Charge of the Court—Case stated.*—Most of the questions involved, however, are raised by the sixth instruction, asked and refused, which, in effect, requested the court to instruct that in making their estimate of damages (if any) sustained by appellee from the construction and operation of appellant's road along W. street, and across A. street, to reject all testimony going to show injury or damage to appellee from sparks of fire from appellants engine, smoke, cinders, unusual noises arising from the ringing of bells, sounding of steam whistles and other annoyances of like character. To whatever extent high authority formerly sustained the views presented by the refused charge, the converse is now the rule, established by the preponderating weight of authority. See the opinion on the question.

*Same.*—The second refused instruction was to the effect that the city council of B. had the power to grant the right of way along the street in question, and that the appellee could not recover damages in this case of the appellant. unless the street had been exclusively appropriated by the appellant, or its road had been constructed in an unskillful or negligent manner. *Held,* that under the facts of this case, there was no error in refusing such charge. See the opinion in extenso on the question.

*Constitutional Law—Damages.*—Art. 1, Sec. 17 of the Constitution of 1876, provides : "No person's property shall be taken, damaged or destroyed for or applied to public use, without adequate compensation," etc. To entitle a party to compensation under said section, it is not necessary that his property shall be destroyed, nor is it necessary that it shall be even taken. It is sufficient to entitle him to compensation that his property has been damaged.

*Same.*—See the opinion in extenso, for a statement of the rule controlling the question of damages resulting to lots in a city, abutting on a street traversed by a railroad.

*Right of Action for Damages.*—In order to give the party injured a right of action, the street need not be entirely destroyed, or wholly and exclusively used by the road. When, as the result of the occupation of it by the railroad company, the use of the street by the adjoining owner is very greatly impaired, and the injury in this respect is one special in its character, and not one common to the entire community at large, an action to recover such special damages will lie.

*Evidence.*—Note in the opinion, evidence held sufficient to show a destruction of the street in front of appellee's house, for all the purposes for which it was originally dedicated, and the practical exercise by the company at that point, of a monopoly of the entire street for its own use, and hence, sufficient to sustain the verdict.

Appeal from Washington County.

Opinion by West, J.

The bills of exceptions reserved on the trial of this cause are all incorporated in the statement of facts.

The statute and the rules prescribed by this court, alike require all bills of exceptions to be settled and filed during the term. (Rev. Stat. Arts 1363 & 1364. Rule 53, District Court.)

By order of the court in this case, the time for preparing the statement of facts, was extended until ten days after the final adjournment of the court.

Under this authority the statement of facts was prepared after the court adjourned and within the ten days allowed. But the bills of exception inserted in the statement of facts being thus signed out of term time cannot, under the law, be considered. See Locket et al. v. Schuerberg, decided at this present term, where all the cases on the point are collected.

Most of the questions, however, that were intended to be saved by these bills, are raised by the sixth instruction asked by appellant, and refused by the court. By that instruction the court was asked in substance to direct the jury in making their estimate of the damages, if any, sustained by appellee from the construction and operation of appellant's road, along West street, and across Academy street, to reject entirely from their consideration all the testimony of the witnesses going to show injury or damage resulting to appellee from sparks of fire from the engines of appellant, smoke, cinders, unusual noises arising from the ringing of bells, the sounding of steam whistles, and other annoyances of a like character. There are no doubt a number of cases decided by courts of high authority, which have held that the elements of damage above enumerated are too remote, too indirect, and inconsequential and general in their character and therefore ought not to be taken into consideration by the jury in making up their final estimate of the damage caused by the continued presence and operation of a steam railway along a street or highway.

The weight of authority, however, seems to sustain the ruling of the court below in permitting the evidence under consideration to go to the jury.

In a work treating very fully and at great length of the Law of Damages published as late as the year 1883, many of the cases on this question are grouped and the rule is deduced from them that the increased exposure to fire by constructing and operating steam railways through streets, near buildings and through fields, is pertinent evidence, and that these matters may be allowed to be proved

to show damage by the depreciation in value of the property so exposed.   3rd Vol. Sutherland on Damages, pp. 436 & 437.

In support of his views on this point the author cites cases from the States of Massachusetts, Ohio, New Jersey, New Hampshire, Maine, Illinois, Minnesota, and also from Pennsylvania the recent case of the Wilmington & D. R. R. Co. v. Stauffer, 60 Pa. St., 374. Many other authorities also besides these can be found to the same effect.   The same writer also lays down the rule that in estimating damages in cases of this character, all the positive inconveniences resulting from the sounding of whistles, the rattling of trains, the jarring of the ground or from the smoke of the locomotive should be estimated, excluding, however, in all cases all common or indirect damage, that is such damage as affects the owner equally in common and no more with all the members of the community.   3 Sutherland on Dam., p. 437.

Nor do we think, taking the facts of this case into consideration, that the district court can be fairly said to have committed any serious error, if any at all, in refusing to give the second instruction asked by the appellant.

That instruction was to the effect that the city council of Brenham had the power to grant the right of way along the street in question and that the appellee could not recover damages in this case of the appellant unless the street had been exclusively appropriated by the appellant, or its road had been constructed in an unskillful or negligent manner.   There is no doubt, as Judge Gould remarks in the case of the H. & T. C. R. R. Co. v. Odum, 53 Texas, 353, that there are a number of authorities to the effect that ordinarily such an addition to the use of a street as the laying in it of a road bed and track for a railway to be operated by steam, if authorized by the proper authorities, gives the adjacent lot owner of itself alone no right to compensation, although his easement in the street be thereby partially impaired, and his lots in consequence rendered somewhat less valuable.

The decisions in this connection referred to by Judge Gould, were made in States having in their constitutions provisions as to the taking of private property for public use similar to those contained in the constitution of the United States and our own constitutions of 1845 and 1869.   See also in this connection the case of the Metropolitan Compress Co. v. Alley, 60 Tex., p. ———, (Tyler Term, 1883.)

Even under those constitutions the books show that all the cases, without exception, lay down the rule that where the street is entirely destroyed by the presence and operation of the railroad that the adjoining owner has his action for damages against the railroad corporation, although it be there by lawful authority..

Also, under these constitutions many cases can be found, to the effect that in order to give the adjoining owner a right of action against the offending corporation, the street need not be entirely destroyed. It need not be closed altogether or wholly abolished. If it is so used and appropriated by the railroad company that its use for a street is very greatly impaired, though it be not closed or destroyed, and that by reason of the manner of constructing or operating the railroad at that point the abutting owner suffers special injury and is very greatly inconvenienced by its presence in gaining access to his property, and the like, he will have his right of action for the special damages so sustained by him, even though the road be there by lawful authority. See in Sedgwick on Construction of Statutory Constitutional law; (2nd ed.) Pomeroy's notes, p. 458, note *a*, where a number of cases to this effect are collected.

On the same point in the case of H. & T. C. R. R. Co. v. Odum, above cited, the court says: "If the use of the street by the railroad would necessarily defeat the purpose of its dedication, and in fact amount to its destruction as a street, we are not prepared to say, let the fee be where it may, that the owners of abutting lots might not claim the constitutional protection. That adjoining lot owners have rights in dedicated public squares beyond legislative control was held by this court in the case of Lamar county vs. Clements, 49 Texas, 348." So also Met. Compress Co. vs. Alley cited supra.

On the same subject see Pumpely vs. Green Bay, &c., &c., 13 Wallis, 166, alluding to the rule referred to above that a private individual generally has no right to compensation though his property be somewhat injured and depreciated in value by the occupation by a steam railway of the street in front of his property.

Mr. Justice Miller speaking of this class of decisions to the effect that for consequential injury to the property of an individual for the prosecution of the improvement in roads, streets, rivers and other highways, that there is no redress, says: These cases "have gone to the extreme and limit of sound judicial construction in favor of this principle, and in some cases beyond it, and it remains true that

where real estate is actually invaded by superinduced additons of water, earth or sand so as to effectually destroy it, or impair its usefulness, it is a taking within the meaning of the constitution." Refering to the constitutional provisions above alluded to, see also Eaton vs. Boston C. & M. R. R. Co., 51 N. H., 504.

Arimond vs. Green Bay R. Co., 31 Wis., 316; Aurora vs. Reed, 57 Illinois, 29. In Eaton vs. Boston C. &. M. R. R. Co. above cited the subject of the character and nature of the injury, and the rule for the measure of damages in such case is fully discussed and the authorities on the subject reviewed. See also Sedgwick 2nd ed. on Con. and Stat. Con p. 455. The suit of the H. & T. C. R. R. Co. vs. Odum above referred to arose under the constitution of 1869. The case now under consideration had its origin since the adoption of our present constitution. In the case of the present appellants v. Graves, decided by the court of appeals, special attention is called by the court to the different language used in our present constitution on the subject of compensation for private property subjected to public use from that contained in all our previous constitutions. In the constitution of 1869 the language used is : "No person's property shall be taken or applied to public use without just compensation being made, unless by the consent of such person." Const. 1869, Art. 1, Section 14.

In our present constitution the terms used are much broader and more significant and are as follows : "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation, &c., &c." Const. of 1875, Art. 1 Sec. 17.

To entitle the party to compensation under our present constitution it is not necessary that his property shall be destroyed, nor is it necessary that it shall be even taken. It is sufficient to entitle him to compensation that his property has been damaged.

The fact of being damaged entitles him to the protection extended by this constitutional provision as fully as if his property had been actually taken or destroyed.

The instruction under consideration was objectionable because it declared the law of this case to be that appellee could not recover at all unless the street in question had been exclusively appropriated by appellant. That is to say if the appellant did not appropriate to its own use alone the entire street to the exclusion of everyone else then appellee could not recover.

We do not regard this to be a correct statement of the law on this subject.

While it is conceded that under the law the city council of Brenham had authority to give and did give the appellant the right to construct and operate its road on West street, and that appellant would not be ordinarily liable to the owners of lots abutting on the street, through their easement in the street, that is, their right to its use was thereby somewhat impaired, and their lots rendered somewhat less valuable by the reason of the presence and operation of appellant's road along the street, yet in every such case and especially so in view of the language of our present constitution above quoted, it has been held that where the continued presence and operation of such road along the street inflicts such special injury to the property of the abutting owner as to practically deprive him of the ordinary use and enjoyment of it, that suchs pecial injury is of such a nature that an action for damages will lie. Ashley vs. Port Huron, 35 Mich. 296; Pumpely vs Green Bay R. Co., 13 Wall, 166; Hooker vs. New Haven & N. B. R. 14 Conn., 146; Grand Rapids Broom Co. vs. Jarvis, 30 Mich., 308; Arimond vs. Green Bay R. Co., 31 Wis., 316.

In order to give the party injured a right of action the street need not be entirely destroyed or wholly and exclusively used by the appellant. When, as the result of the occupation of it by the railroad company, the use of the street by the adjoining owner is very greatly impaired and the injury in this respect is one special in its character, and not one common to the entire community at large, an action to recover such special damages will lie.

In speaking of taking a street or road for the use of a steam railway, in the Inhabitants of Springfield vs. the Connecticut River R. R. Co., 4 Cush., 71, Chief Justice Shaw says : "The two uses are almost if not wholly inconsistent with each other, so that taking the highway for a railroad will nearly supersede the former use to which it had been legally appropriated."

In Ford vs. The Chicago & North Western R. R. Co., 14 Wis., 609 –616, the court speaking of the injuries resulting to adjoining owners from having a steam railway occupying the street observes : "The use (of the street) by the railroad company diminishes its value and renders it inconvenient and comparatively useless. It

Under the wording of the present constitution of Illinois, which

is in substance the same as ours, (Const. Ill., Art. 2, Sec. 3), it has been held that where a municipal corporation, though it has full power granted to it to establish, make, grade, and improve streets, has once, in the exercise of this power, established the grade of the street, it cannot change it as the public interest may require without responding in damages to such individuals as have erected buildings with reference to former grade, and where property is impaired in value by the change in the grade of the street. Elgin vs. Eaton, 83 Ills., 535; S, C., 25 Am. R., 412. See Const. of Ills., Art. 2, Sec., 11. See also 2 Dillon on Mun. Corp., 3rd Ed., Sec. 990 and note 1. Also see in same vol. Sec. 995 and note 1 on that section. The following cases retain the same doctrine : Rhodes vs. Cincinnatti, 10 Ohio, 160; McCombs vs. Akron, 15 Ohio,474; same case 18 Ohio, 229; Crawford vs. Delaware, 7 Ohio St., 459; Akron vs. Chamberlain, 34 Ohio, St., 328; Nashville vs. Nichol, 59 Tenn., 338.

Mr. Sedgwick in his standard work on the Measure of Damages in discussing a then recent New York case which held that where in grading a street the ground was cut down so as greatly to injure the adjacent proprietor, but none of his land was actually "taken," that this was *damnum absque injuria*, because the constitution of New York had made no mention of indirect or consequential damages, that although the proprietor had actually suffered injury still it could not be said that property had been "taken for public use" within the meaning of the constitution, disapproves the decision, and says "it appears to me the decision is an unfortunante one, although sound perhaps on a strict construction of the constitutional clause. But it is to be regretted that the court felt itself bound to apply a strict instead of a liberal construction. The tendency of our legislation in matters of public improvements is undoubtedly to sacrifice the individual to the community." See 1 Vol.Sedgwick Meas. of Dam., 7th Ed., p. 212.

When the language of the instruction under consideration, is closely examined it will be found that the action of the court was not erroneous in refusing to give it in the form asked, under the special facts of the case as disclosed in the record. In this case the evidence briefly in substance shows the following state of facts to exist in reference to the appellant's occupation of the street in question immediately in front of the homestead and private residence of the appellee:

Appellee had purchased and was residing upon the premises long

before defendant constructed its railroad in West street. Defendant built its trestle work in front of plaintiff's dwelling house, and about thirty-three feet therefrom. From the southeast corner of appellee's fence to the trestle work is thirteen feet and four inches distant. The width of West street at plaintiff's lot was forty feet and six inches before defendant constructed its trestle therein; the mud sills to the beems average in length twenty feet and three inches; there is two feet in width of the original street left open on the east side of the trestle work in front of plaintiff's premises; there is only left open on the west side of the trestle work between plaintiff's front fence and the west side of defendant's trestle work a part of West street fourteen feet and three inches in width; opposite the southeast corner of plaintiff's lot the trestle work is sixteen feet in height from top to bottom; opposite the northeast corner of plaintiff's lot appellant's trestle work is twenty-two feet and seven inches in height.

Plaintiff's dwelling is almost under defendant's trestle work; her buggy house is nearer the railroad than her dwelling; sparks of fire emitted from defendant's passing locomotive engines are thrown on plaintiff's premises; plaintiffs houses are constructed of wood.

Appellee's dwelling fronts railroad in West street with doors and windows opening thereon. Neither West street nor Academy street is over forty-five feet wide. The ends of the mud sills project out of the ground one foot and four inches beyond the uprights. The base of the fill or embankment in West street at the south line of Academy street, where said embankment stops, spreads over the entire of West street, and at this point the base of the embankment is forty-eight feet wide and fourteen feet and six inches high. Defendant's railroad takes up nearly the entire of West street, and the whole of West street is destroyed for any practical purpose. A buggy could not turn between defendant's trestle and plaintiff's front fence. West street was a thoroughfare, but people do not travel it now as formerly in going to and from town; travel was on Academy street to West street and thence to town.

It was agreed that plaintiff was, before defendant's railroad was built in West street, and has ever since been, the owner in fee simple, by general warranty deeds under A. A. Rippetoe, of lot No. 12, and a part of lot No. 13. Said lots were conveyed in 1867 to C. K. Breedlove as executor of Eddin's estate. Plaintiff lived on her premises two years before defendant's road was built in West street. In Rippetoe's addition West street was not over forty-five feet wide. Rippetoe said that in extending West street into said addition he did not make it as wide as the old street. Defendant claims that it has extended the width of West street by the city council purchasing a strip of land 20 feet in width for the purpose of defendant's right of way from Green and Farrish off of lot No. 24, and pleads this 20 feet in lieu of that part of West street appropriated by defendant in building its railroad.

It was admitted that the appellant's road was built in West street since the year 1878. The streets of the original town of Brenham are 60 feet wide. The streets in Rippetoe's addition including West street are not wider than 45 feet, and at the residence of appellee West street is not that wide. In reference to the purchase by the city of Brenham of the narrow strip of 20 feet along West street of Green and Farrish the record gives very little information. It seems to have been purchased with a view of giving that portion of West street, in the Rippetoe addition, a width about equal to that of the other portion of the same street in the old part of the town of Brenham.

Nothing, however, appears to have been done with this strip. Green and Farrish moved their fence back, and that is all the evidence. We are of the opinion that the evidence, which was believed by the jury and by their verdict found to be be true, disclosed an almost complete appropriation of that part of West street adjoining appellee's premises by the appellant's road. It amounted at that point under the proof to the destruction of the street for all the purposes for which it was originally dedicated to the public. The appellant practically under the evidence had at that point a monopoly of the entire street for its own use.

A good deal of the evidence was offered as to where the fee to the street was vested. As was intimated in the case of H. & T. C. R. R. Co. vs. Odum we do not regard that matter as essential or very material. It is enough, be the fee where it may, that the street has been legally dedicated by the owner to the use of the public, and that the appellee, as the owner of property, purchased with reference to and abutting on said street, has an easement and substantial and valuable right in said street. If this be so, when specially damaged and injured he has a right of action against the party inflicting such special injury, be the fee where it may. The main charge of the court is also objected to on special grounds. We have carefully examined it, with reference to the facts of this case as developed by the evidence. And while it cannot be said that the charge is in every portion entirely correct, and while it is not as full and as clear in all respects as is desirable in its directions to the jury as to the manner in which they should proceed in estimating the damages, yet upon the whole it directed the minds of the jury, perhaps, sufficiently to the proper matters to be inquired into, and the court did not, we think, by its action in this respect, prejudice the rights of the appellant, or commit such serious error as to require, on that account, the reversal of the case.

The verdict was one which under the proof before them the jury were authorized in finding.

We are of the opinion that there is no material error in the record, and that the judgment of the district court should be affirmed, and it is accordingly so ordered.