## THE G., C. & SANTA FE R. R. CO. v. M. S. EDDINS.

### (Case No. 1599.)

1. BILLS OF EXCEPTION.— Bills of exception inserted in a statement of facts, which under an order of court entered of record was permitted to be filed within ten days after the close of the term, cannot be considered.

2. DAMAGES.— The occupant and owner of a lot adjacent to a street, along which a railway had been constructed, sued for damage done his property by the construction of the road. On the trial the court refused to give a charge asked by the defendant, to the effect that the plaintiff could only recover when some actual physical damage was done to the lot by the construction of the road, and that the jury should reject from consideration all claim for damages based upon probable injury to occur from fire, from noise of trains, from probable running off the track of cars on the premises of plaintiff, and from probable scaring of horses. *Held*, that there was no error in refusing the charge.

3. SAME.— The right to damages for injury done to property adjacent to a street along which a railway track is constructed, when the city, having authority, had granted the right of way, is not restricted to cases where the street has been exclusively appropriated by the road, or where the road has been unskilfully constructed. R. R. Co. *v.* Odum, 53 Tex., 353, referred to and discussed.

4. DAMAGES.— By art. 1, sec. 17, of the constitution of 1876, it is provided that "no person's property shall be taken, *damaged* or destroyed for, or applied to, public use, without adequate compensation." *Held:*

(1) The damage done to property by the construction of a railroad as much entitles one to recovery as if the property had been destroyed.

(2) It is not necessary that a railway along a street should exclusively appropriate it, in order to entitle an adjacent proprietor to damages for its construction.

(3) When such road along a street inflicts such special injury on the abutting owner as to practically deprive him of the ordinary use and enjoyment of it, an action for damages will lie. Following Ashley *v.* Port Huron, 35 Mich., 296; Pumpelly *v.* Green Bay R. R. Co., 13 Wallace, 166, and other cases cited.

(4) When by the construction of the road the use of the street by the adjoining owner is very greatly impaired, and the injury in this respect is one special in its character, and not one common to the entire community, an action to recover such special damages will lie.

(5) In such case it is immaterial to inquire in whom the fee to the street was vested, when it is shown that it was dedicated to the use of the public, and the complainant, as the owner of adjacent property, has an easement and a substantial and valuable right in the street. In every such case, he who sustains special damage by the construction of a railway along it, has a right of action, no matter where the fee is vested.

5. CHARGE OF COURT.— See statement of case for a charge of the court in a suit brought to recover damages for injury sustained in the construction of a railway, concerning which there was no such error as to require a reversal.

APPEAL from Washington. Tried below before the Hon. I. B. McFarland.

M. S. Eddins brought this suit to recover damages done to her homestead lot, situated in the city of Brenham, by reason of the construction of defendant's railway along a street in front of the lot.

Defendant alleged the building of the road in a careful and skilful manner, under authority conferred by its charter and by an ordinance of the city of Brenham; that the fee of the street was not in plaintiff, and that it had become the property of defendant by conveyance from A. H. Rippetoe, the original proprietor, who laid off the addition to the town. Defendant also alleged the purchase of twenty feet of ground along the street and its addition to the width thereof.

It denied the exclusive appropriation of the street, and alleged that it was still left open and free to the use of plaintiff and the public.

Judgment for plaintiff for $800.

The facts are clearly indicated or stated in the opinion. The main charge of the court was as follows:

1. "This is an action brought by plaintiff to recover damages alleged to have been done to plaintiff's property, in its value, use and occupation, by the building of defendant's road along West street, just in front of plaintiff's property, and across Academy street, near plaintiff's premises, situated in the town of Brenham.

2. "The defendant pleads: 1st. A general denial. 2d. That defendant had purchased the fee in the street known as West street from A. H. Rippetoe and others. 3d. That defendant had obtained the right of way along West street from the town council of the city of Brenham, and that said West street crosses Academy street.

3. "If the jury believe from the evidence that West street had been laid out and dedicated to public use before plaintiff purchased her lot, and that said lot abuts on said West street, and that said lot was sold her with reference to the use of said street, then said Rippetoe and others could not sell said street, and the railroad company took nothing by such conveyance.

4. "The town council of the city of Brenham had the authority to grant the right of way to said railroad company along said West street; but the company were bound to exercise that right of way in such manner as not to injure the property abutting on said street.

5. "The question for the jury to determine is, has the plaintiff's

property been permanently damaged by the building and use of the defendant's road.

6. "The burden of proof is on the plaintiff, and she must prove affirmatively, to the satisfaction of the jury, that her property has been permanently damaged by the building and use of said road, and the amount of such damage.

7. "If you believe from the evidence that the plaintiff's property has been permanently damaged by the building and use of the defendant's railroad, you will find for the plaintiffs and assess the damages as you may feel warranted by the proof in the case, not to exceed the amount claimed in the petition.

8. "If you are not satisfied from the evidence that the plaintiff has suffered damage to the property by the building and use of said railroad you will find for the defendant.

(Signed)                      " I. B. McFarland,
                    " Judge 32nd Jud. Dist. of Texas."

*Hume & Shepard*, for appellant, on the refusal of the court to give the second instruction, cited: Rev. Civil Stat., arts. 4170–4173; H. & T. C. R'y Co. v. Odum, 53 Tex., 343; Victoria v. Phillips, 55 Tex. (4 Tex. L. J., 534); Rio Grande R. Co. v. Brownsville, 45 Tex., 88; Transportation Co. v. Chicago, 99 U. S., 635; Barnes v. Keokuk, 94 U. S., 341; Railroad Co. v. Richmond, id., 529; Shearman & R. on Negl., §§ 370, note, 371; 2 Dillon Munic. Corp., §§ 555–6; id., §§ 576–7; Cooley Const. Lim., 542 to 555 and notes; 1 Thompson on Neg., p. 358, § 23; Field on Damages, §§ 43, 44; Cooley on Torts, 615 *et seq.;* Addison on Torts, 1040; Weeks' Damnum Absque Injuria, §§ 4 and 8; Pierce on Railways, pp. 223–241; Sedgw. Const. and Stat. Law, 454 *et seq.* and notes; Sedgw. Meas. Dam., side p. 566; Grand Rapids R'y Co. v. Heisel, 38 Mich., 62 (31 Am., 306); Killinger v. Forty-second St. R'y Co., 50 N. Y., 206; People v. Kerr, 27 N. Y., 188; Drake v. Railroad Co., 7 Barb., 508; Williams v. N. Y. C. R. R., 16 N. Y., 97; Hatch v. Vermont C. R'y Co., 25 Vt., 49; Stone v. Railroad Co., 68 Ill., 394; Chicago Railway Co. v. McGinnis, 79 Ill., 269; Stetson v. Railroad Co., 75 Ill., 74; Smith v. Boston, 7 Cush., 254; Walker v. Railroad Co., 103 Mass., 10; Presbrey v. Railway Co., id., 1; Attorney Gen. v. Railroad Co., 125 Mass., 515; Imelay v. Railroad Co., 26 Conn., 249; Fellows v. New Haven, 44 Conn., 240; S. C., 26 American Rep., 447; Elliott v. Railroad Co., 32 Conn., 579; Radcliff v. Mayor, etc., Brooklyn, 4 N. Y., 195; Cadle v. Railroad Co., 44 Iowa, 11; Ross v. Clinton, 46 Iowa, 606 (26 Am. Rep., 169); Hendessbote v. Ottumwa, id., 658

(id., 182); Smith v. Alexandria, 33 Gratt., 208 (26 Am. Rep., 788); Rex v. London Dock Co., 5 Adolph. & E., 163; 31 Eng. Com. Law Rep., 566; Hammersmith v. Brand, L. R., 4 H. L., 178; Rickett v. Metropolitan R'y Co., L. R., 2 H. L., 175; Glasgow Railroad Co. v. Hunter, L. R., 2 H. L., 78; Penny v. Railroad Co., 7 E. & B., 660; S. C., 26 L. J. (C. B.), 225; Caledonia Railroad Co. v. Ogilvy, 2 McQ., 229; Rex v. Bristol Dock Co., 12 East, 429; Duke of Buccleugh v. Metropolitan Board of Public Works, L. R., 5 H. L., 418.

*Offa L. Eddins*, for appellee, on the refusal to give the sixth instruction asked by appellee, cited: Mills on Eminent Domain, § 163; Cooley on Const. Lim., note 1 [*566]; Somerville & Eaton R. R. Co. *ads.* Doughty, 22 N. J., 495; Redf. on R'y, subdivision 11 of § 82 [pp. *343–4]; 20 Am. Rep., 220 (55 N. H., 413); Elizabeth, L. & B. S. R. R. Co. v. Combs, 19 Am. Rep., 74 (10 Bush, 382); Stone v. F., P. & Northwestern R. R. Co., 18 Am. Rep., 559 (63 Ill., 394); 2 Metc., 149.

On the doctrine contained in the second instruction refused, he cited: Sec. 17 of art. 1 of Const. of Texas, adopted in 1876; Gulf, Colorado & Santa Fe R'y Co. v. Myra Graves, 1 vol. Tex. Law Review, p. 8; E., L. & Big Sandy R. R. Co. v. Combs, 19 Am. Rep., 67 (10 Bush, 382); Mills' Em. Domain, § 200; City of Elgin v. Eaton, 25 Am. Rep., 412 (83 Ill., 535); Johnson v. City of Parkersburg, 37 Am. Rep., 779 (16 W. Va., 402); Cent. B. U. P. R. v. Twine, 33 Am. Rep., 203 (23 Kan., 585); Stone v. F., P. & Northwestern R. R. Co., 18 Am. Rep., 556 (68 Ill., 394); Stack v. City of E. St. Louis, 28 Am. Rep., 620 (85 Ill., 377); Carli v. Still. St. R'y & Trans. Co., 41 Am. Rep., 290 (28 Minn., 373).

West, Associate Justice.— The bills of exceptions reserved on the trial of this cause are all incorporated in the statement of facts. The statute and the rules prescribed by this court alike require all bills of exceptions to be settled and filed during the term. R. S., arts. 1363, 1364; Rule 53, District Court.

By order of the court in this case, the time for preparing the statement of facts was extended until ten days after the final adjournment of the court. Under this authority, the statement of facts was prepared after the court adjourned and within the ten days allowed. But the bills of exception inserted in the statement of facts, being thus signed out of term time, cannot under the law be considered. See Lockett *et al.* v. Schurenberg, decided at this term (see *ante*, p. 610), where all the cases on the point are collected.

660      G., C. & SANTA FE R. R. Co. v. EDDINS.    [Galv. Term,

Opinion of the court. ·

Most of the questions, however, that were intended to be saved by these bills are raised by the sixth instruction asked by appellant, and refused by the court. By that instruction the court was asked, in substance, to direct the jury, in making their estimate of the damages, if any, sustained by appellee from the construction and operation of appellant's road along West street and across Academy street, to reject entirely from their consideration all the testimony of the witnesses going to show injury or damage resulting to appellee from sparks of fire from the engines of appellant, smoke, cinders, unusual noises arising from the ringing of bells, the sounding of steam whistles and other annoyances of a like character.

There are no doubt a number of cases decided by courts of high authority, which have held that the elements of damage above enumerated are too remote, too indirect and inconsequential and general in their character, and therefore ought not to be taken into consideration by the jury in making up their final estimate of the damage caused by the continued presence and operation of a steam railway along a street or highway.

The weight of authority, however, seems to sustain the ruling of the court below in permitting the evidence under consideration to go to the jury.

In a work treating very fully and at great length of the law of damages, published as late as the year 1883, many of the cases on this question are grouped, and the rule is deduced from them that the increased exposure to fire by constructing and operating steam railways through streets near buildings and through fields is pertinent evidence, and that these matters may be allowed to be proved to show damage by the depreciation in value of the property so exposed. Vol. 3, Sutherland on Damages, pp. 436–37.

In support of his views on this point, the author cites cases from the states of Massachusetts, Ohio, New Jersey, New Hampshire, Maine, Illinois, Minnesota, and also from Pennsylvania, the recent case of the Wilmington, etc., R. R. Co. *v.* Strifer, 60 Pa. St., 374. Many other authorities also besides these can be found to the same effect.

The same writer also lays down the rule, that, in estimating damages in cases of this character, all the positive inconveniences, resulting from the sounding of whistles, the rattling of trains, the jarring of the ground, or from the smoke of the locomotive, should be estimated, excluding, however, in all cases, all common or indirect damage; that is, such damage as affects the owner equally in com-

mon and no more with all the members of the community. 3 Sutherland on Dam., p. 437.

Nor do we think, taking the facts of this case into consideration, that the district court can be fairly said to have committed any serious error, if any at all, in refusing to give the second instruction asked by the appellant. That instruction was to the effect that the city council of Brenham had the power to grant the right of way along the street in question, and that the appellee could not recover damages in this case of the appellant, unless the street had been *exclusively* appropriated by the appellant, or its road had been constructed in an unskilful or negligent manner.

There is no doubt, as Judge Gould remarks in the case of The H. & T. C. R. R. Co. *v.* Odum, 53 Tex., 353, that there are a number of authorities to the effect that ordinarily such an addition to the use of a street as the laying in it of a road-bed and track for a railway, to be operated by steam, if authorized by the proper authorities, gives the adjacent lot owner, of itself alone, no right to compensation, although his easement in the street be thereby partially impaired and his lots, in consequence, rendered somewhat less valuable.

The decisions in this connection referred to by Judge Gould were made in states having in their constitutions provisions as to the taking of private property for public use, similar to those contained in the constitution of the United States and our own constitutions of 1845 and 1869. See, also, in this connection, the case of the Metropolitan Compress Co. *v.* Alley (Tyler term, 1883). Even under those constitutions the books show that all the cases, without exception, lay down the rule that where the street is entirely destroyed by the presence and operation of the railroad, that the adjoining owner has his action for damages against the railroad corporation, although it be there by lawful authority. Also, under these constitutions, many cases can be found to the effect that in order to give the adjoining owner a right of action against the offending corporation, the street need not be entirely destroyed. It need not be closed altogether or wholly abolished.

If it is so used and appropriated by the railroad company that its use for a street is very greatly impaired, though it be not closed or destroyed, and that, by reason of the manner of constructing or operating the railroad at that point, the abutting owner suffers special injury, and is very greatly inconvenienced by its presence in gaining access to his property and the like, he will have his right of action for the special damages so sustained by him, even though the road

be there by lawful authority. See, in Sedgwick on Construction of Statutory and Constitutional Law (2d ed.), Pomeroy's Notes, p. 458, note a, where a number of cases to this effect are collected. .

On the same point, in the case of H. & T. C. R. R. Co. v. Odum, above cited, the court says: " If the use of the street by the railroad would necessarily defeat the purpose of its dedication, and in fact amount to its destruction as a street, we are not prepared to say, let the fee be where it may, that the owners of abutting lots might not claim the constitutional protection. That adjoining lot owners have rights in dedicated public squares beyond legislative control was held by this court in the case of Lamar County v. Clements, 49 Tex., 348." See, also, Met. Compress Co. v. Alley, cited *supra.*

On the same subject, in Pumpelly v. Green Bay R. R. Co., 13 Wall., 166, alluding to the rule referred to above, that a private individual generally has no right to compensation, though his property be somewhat injured and depreciated in value by the occupation by a steam railway of the street in front of his property, Mr. Justice Miller, speaking of this class of decisions, to the effect that for consequential injury to the property of an individual for the prosecution of improvements in roads, streets, rivers and other highways, that there is no redress, says these cases " have gone to the extreme and limit of sound judicial construction in favor of this principle, and, in some cases, *beyond it;* and it remains true that, where real estate is actually invaded by superinduced additions of water, earth or sand, so as to effectually destroy it or impair its usefulness, it is a *taking* within the meaning of the constitution," referring to the constitutional provisions above alluded to. See, also, Eaton v. Boston, C. & M. R. R. Co., 51 N. H., 504; Arimond v. Green Bay R. Co., 31 Wis., 316; Aurora v. Reed, 57 Ill., 29.

In Eaton v. Boston, C. & M. R. R. Co., above cited, the subject of the character and nature of the injury and the rule for the measure of damages in such case is fully discussed, and the authorities on the subject reviewed. See, also, Sedgwick (2d ed.) on Con. and Stat. Law, p. 455. The suit of the H. & T. C. R. R. Co. v. Odum, above referred to, arose under the constitution of 1869. The case now under consideration had its origin since the adoption of our present constitution.

In the case of the present appellant v. Graves, 1 Tex. Law Rev., p. 8, decided by the court of appeals, special attention is called by the court to the different language used in our present constitution, on the subject of compensation for private property subjected to public use, from that contained in all our previous constitutions

In the constitution of 1869 the language used is: "No person's property shall be taken or applied to public use without just compensation being made, unless by the consent of such person." Const. 1869, art. I, sec. 14.

In our present constitution, the terms used are much broader and more significant, and are as follows: "No person's property shall be taken, *damaged*, or destroyed for or applied to public use, without adequate compensation," etc.     Const. of 1876, art. I, sec. 17.

To entitle the party to compensation under our present constitution, it is not necessary that his property shall be destroyed, nor is it necessary that it shall be even taken.  It is sufficient to entitle him to compensation that his property has been *damaged.* The fact of being damaged entitles him to the protection extended by this constitutional provision, as fully as if his property had been actually taken or destroyed.

The instruction under consideration was objectionable because it declared the law of this case to be that appellee could not recover at all unless the street in question had been *exclusively* appropriated by appellant.  That is to say, if the appellant did not appropriate to its own use alone the entire street, to the exclusion of every one else, then appellee could not recover.

We do not regard this to be a correct statement of the law on this subject.  While it is conceded that, under the law, the city council of Brenham had authority to give, and did give, the appellant the right to construct and operate its road on West street, and that appellant would not be ordinarily liable to the owners of lots abutting on the street through their easement in the street; that is, their right to its use was thereby somewhat impaired, and their lots rendered somewhat less valuable by reason of the presence and operation of appellant's road along the street, yet in every such case, and especially so in view of the language of our present constitution, above quoted, it has been held that where the continued presence and operation of such road along the street inflicts such special injury to the property of the abutting owner as to practically deprive him of the ordinary use and enjoyment of it, that such special injury is of such a nature that an action for damages will lie.   Ashley *v.* Port Huron, 35 Mich., 296; Pumpelly *v.* Green Bay R. Co., 13 Wall., 166; Hooker *v.* New Haven, etc., R. R., 14 Conn., 146; Grand Rapids Boom Co. *v.* Jarvis, 30 Mich., 308; Arimond *v.* Green Bay R. Co., 31 Wis., 316.

In order to give the party injured a right of action the street

need not be entirely destroyed or wholly and exclusively used by the appellant.

Where, as the result of the occupation of it by the railroad company, the use of the street by the adjoining owner is very greatly impaired, and the injury, in this respect, is one special in its character, and not one common to the entire community at large, an action to recover such special damage will lie.

In speaking of taking a street or road for the use of a steam railway, in The Inhabitants of Springfield v. The Connecticut River R. R. Co., 4 Cush., 71, Chief Justice Shaw says: " The two uses are almost, *if not wholly*, inconsistent with each other, so that taking a highway for a railroad will *nearly supersede* the former use to which it had been legally appropriated."

In Ford v. The Chicago & Northwestern R. R. Co., 14 Wis., 609–616, the court, speaking of the injuries resulting to adjoining owners from having a steam railway occupying the street, observes: " The use " (of the street) " by the railroad company diminishes its value, and renders it inconvenient and comparatively useless. It would be a most unjust and oppressive rule to deny the owner compensation under such circumstances." See, to the same effect, Pomeroy v. Chicago & M. R. R. Co., 16 Wis., 640; Wager v. Troy, etc., R. R. Co., 25 N. Y., 526.

Judge Cooley, in his excellent work on Constitutional Limitations, in commenting on the harsh rule contended for by the appellant in this case, uses the following very pertinent language: " The corporation under these circumstances will substantially have a monopoly in the use of the street; their vehicles will drive the business from it, and the business property will become comparatively worthless. And if property owners are without remedy in such case, it is certainly a very great hardship upon them, and a very striking and forcible instance and illustration of damage without legal injury."

Under the wording of the present constitution of Illinois, which is in substance the same as ours (Const. Ill., art. 2, sec. 3), it has been held that where a municipal corporation, though it has full power granted to it to establish, make, grade and improve streets, has once, in the exercise of this power, established the grade of the street, it cannot change it, as the public interest may require, without responding in damages to such inhabitants as have erected buildings with reference to the former grade, and where property is impaired in value by the change in the grade of the street. Elgin v. Eaton, 83 Ill., 535; S. C., 25 Am. R., 412. See Const. of Illinois, art. 2, sec. 11.

See, also, 2 Dillon on Mun. Corp. (3d ed.), sec. 990, and note 1; also see in same vol., sec. 995, and note 1 on that section. The following cases maintain the same doctrine: Rhodes v. Cleveland, 10 Ohio, 160; McCombs v. Akron, 15 Ohio, 474; 18 Ohio, 229; Crawford v. Delaware, 7 Ohio St., 459; Akron v. Chamberlain, 34 Ohio St., 328; Nashville v. Nichol, 59 Tenn., 338.

Mr. Sedgwick, in his standard work on the Measure of Damages, in discussing a then recent New York case which held that where, in grading a street, the ground was cut down so as greatly to injure the adjacent proprietor, but none of his land was actually "taken," that this was *damnum absque injuria*, because the constitution of New York had made no mention of indirect or consequential damages; that although the proprietor had actually suffered injury, still it could not be said that property had been "taken for public use," within the meaning of the constitution, disapproves the decision, and says, "it appears to me the decision is an unfortunate one, although sound, perhaps, on a strict construction of the constitutional clause. But it is to be regretted that the court felt itself bound to apply a strict instead of a liberal construction. The tendency of our legislation in matters of public improvement is undoubtedly to sacrifice the individual to the community." See 1 vol. Sedg. Meas. of Dam. (7th ed.), p. 212.

When the language of the instruction under consideration is closely examined, it will be found that the action of the court was not erroneous in refusing to give it in the form asked, under the special facts of this case as disclosed in the record.

In this case the evidence briefly, in substance, shows the following state of facts to exist in reference to the appellant's occupation of the street in question, immediately in front of the homestead and private residence of the appellee:

Appellee had purchased and was residing upon the premises long before defendant constructed its railroad in West street. Defendant built its trestle-work in front of plaintiff's dwelling-house, and about thirty-three feet therefrom. From the southeast corner of appellee's fence to the trestle-work is thirteen feet and four inches distant. The width of West street at plaintiff's lot was forty-four feet and six inches before defendant constructed its trestle therein; the mud-sills to the bents average in length twenty feet and three inches; there is ten feet in width of the original street left open on the east side of the trestle-work in front of plaintiff's premises; there is only left open on the west side of the trestle-work, between plaintiff's front fence and the west side of defendant's trestle-work, a part of West street, fourteen feet and three inches in width; opposite

the southeast corner of plaintiff's lot the trestle-work is sixteen feet in height from top to bottom; opposite the northeast corner of plaintiff's lot appellant's trestle-work is twenty-two feet and seven inches in height. Plaintiff's dwelling is almost under defendant's trestle-work. Her buggy house and stable are nearer the railroad than her dwelling. Sparks of fire emitted from defendant's passing locomotive engines are thrown on plaintiff's premises. Plaintiff's houses are constructed of wood.

Appellee's dwelling fronts railroad in West street, with doors and windows opening thereon. Neither West street nor Academy street is over forty-five feet wide. The ends of the mud-sills project out of the ground one foot and four inches beyond the uprights. The base of the fill, or embankment in West street at the south line of Academy street where said embankment stops, spreads over the entire of West street, and at this point the base of the embankment is forty-eight feet wide and fourteen feet and six inches high. Defendant's railroad takes up nearly the entire of West street, and the whole of West street is destroyed for any practical purpose. A buggy could not turn between defendant's trestle and plaintiff's front fence. West street was a thoroughfare, but people do not travel it now as formerly in going to and from town. Travel was on Academy street to West street and thence to town.

It was agreed that plaintiff was, before defendant's railroad was built in West street, and has ever since been, the owner in fee simple, by general warranty deeds under A. H. Rippetoe, of lot No. 12 and a part of lot No. 13. Said lots were conveyed in 1867 to C. R. Breedlove, as executor of Eddins' estate. Plaintiff lived on her premises ten years before defendant's road was built in West street. In Rippetoe's addition West street was not over forty-five feet wide. Rippetoe said that in extending West street into said addition he did not make it as wide as the old street.

Defendant claims that it has extended the width of West street by the city council purchasing a strip of land twenty feet in width for the purpose of defendant's right of way from Green & Farrish off of lot No. 24, and pleads this twenty feet in lieu of that part of West street appropriated by defendant in building its railroad.

It was admitted that the appellant's road was built in West street since the year 1878. The streets of the original town of Brenham are sixty feet wide. The streets in Rippetoe's addition, including West street, are not wider than forty-five feet, and at the residence of appellee West street is not that wide. In reference to the purchase by the city of Brenham of the Warren strip, seven hundred and twenty feet along West street, the record gives very little infor-

mation.   It seems to have been purchased with a view of giving that portion of West street in the Rippetoe addition a width about equal to that of the other portion of the same street in the old part of the town of Brenham.   Nothing, however, appears to have been done with this strip.   Those who once owned it moved their fence back, and that is all the evidence discloses on the subject.

We are of the opinion that the evidence, which was believed by the jury, and by their verdict found to be true, disclosed an almost complete appropriation of that part of West street, adjoining appellee's premises, by the appellant's road.   It amounted, at that point, under the proof, to the destruction of the street for all the purposes for which it was originally dedicated to the public.   The appellant practically, under the evidence, had at that point a monopoly of the entire street for its own use.

A good deal of evidence was offered as to where the fee to the street was vested.   As was intimated in the case of H. & T. C. R. R. Co. v. Odum, we do not regard that matter as essential or very material.   It is enough, be the fee where it may, that the street has been legally dedicated by the owner to the use of the public, and that the appellee, as the owner of property purchased with reference to and abutting on said street, has an easement and a substantial and valuable right in said street.   If this be so, when specially damaged and injured, he has a right of action against the party inflicting such special injury, be the fee where it may.

The main charge of the court is also objected to on several grounds.   We have carefully examined it with reference to the facts of this case as developed by the evidence.   And while it cannot be said that the charge is in every portion entirely correct, and while it is not as full and as clear in all respects as is desirable in its directions to the jury as to the manner in which they should proceed in estimating the damages, yet, upon the whole, it directed the minds of the jury perhaps sufficiently to the proper matters to be inquired into, and the court did not, we think, by its action in this respect, prejudice the rights of the appellant, or commit such serious error as to require on that account the reversal of the case. The verdict was one which, under the proof before them, the jury were authorized in finding.

We are of the opinion that there is no material error in the record, and that the judgment of the district court should be affirmed. It is accordingly so ordered.

Affirmed.

[Opinion delivered January 29, 1884.]