## BREWSTER v. CITY OF FORNEY.
### (No. 166–3147.)

(Commission of Appeals of Texas, Section B. June 16, 1920.)

1. **Municipal corporations ⊕═733(2)—City responsible for damages arising out of erection and operation of sewerage plant.**

If a sewerage plant could not be constructed and operated, however compelling the necessity for it, without doing injury to the property of a citizen, then the city must stand the loss, and is bound to compensate the citizen for the damage suffered.

2. **Eminent domain ⊕═69—Property taken or damaged must be paid for.**

Property may not be "taken" for a public use, nor can it be damaged, unless the citizen is compensated to the extent of the damage.

3. **Nuisance ⊕═1—Definition.**

Anything that works hurt, inconvenience, or damage, or which is done to the hurt of the lands, tenements, or hereditaments of another, is a nuisance, and it is not necessary that the annoyance should endanger health; it being sufficient if it occasion that which is offensive to the senses, and which renders the enjoyment of life and property uncomfortable.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Nuisance.]

4. **Municipal corporations ⊕═736—Sewerage system a nuisance.**

The construction and operation of a sewerage system by a city was a nuisance, where it made a citizen's place undesirable as a residence and decreased its value.

5. **Trial ⊕═355(3)—Finding of jury that sewage was not nuisance a mere immaterial expression of opinion.**

Where the jury, in answer to special issues, found facts showing that the construction and operation of sewerage system was a nuisance, an answer of the jury to another special issue that they did not believe that the construction and operation constituted a nuisance, was a mere expression of opinion, and not a finding of fact.

6. **Trial ⊕═365(1)—Mere finding of "damage" to land a finding of nuisance; "injure."**

A finding by a jury that a citizen's land was damaged $10 per acre by reason of the construction and operation of a sewerage system by a city was a finding that such construction and operation constituted a nuisance, since "damaged" and "injured," in the sense of the Constitution, are synonymous and convertible terms.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Damage; Injure.]

7. **Appeal and error ⊕═1094(1) — Finding of fact by Court of Civil Appeals binding on Commission of Appeals.**

The rule that findings of the Court of Civil Appeals as to questions of fact are binding on the Commission of Appeals is applicable and binding only as to issues which are clearly found, and finding upon which is material and controlling in the decision of the case.

8. **Municipal corporations ⊕═736—City liable for nuisances same as natural citizen.**

A city is held to the same measure of liability, as far as nuisances are concerned, as is a natural citizen.

### Holding of Supreme Court.

9. **Appeal and error ⊕═1177(8) — Judgment cannot be rendered in Supreme Court on conflicting findings.**

On review of a judgment of the Court of Civil Appeals affirming a judgment in favor of defendant, where the trial court was not warranted in rendering a judgment against the plaintiff on account of contradictory findings of the jury in answer to special issues, the Supreme Court cannot render judgment in favor of plaintiff on the findings, although the contradictory findings of the jury were found under an incorrect definition in the trial court's charge.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Action by A. L. Brewster against the City of Forney. From a judgment of the Court of Civil Appeals (196 S. W. 636) affirming judgment for defendant, plaintiff brings error. Judgments reversed, and cause remanded to district court.

Bond & Bond, of Terrell, and Woods & Morrow, of Kaufman, for plaintiff in error.

Lee R. Stroud and Wynne & Wynne, all of Kaufman, for defendant in error.

KITTRELL, J. The parties will be referred to as plaintiff and defendant. Plaintiff sued defendant for damages to his property caused by the construction and operation of a sewerage system. The case was submitted on special issues. There were no preliminary instructions as to

the law by which the jury should be guided in answering the issues, 19 in number, but at the end the jury was properly instructed, as to the burden of proof. At the request of defendant the court defined a "nuisance" as follows:

"A nuisance is the use of one's own property for the conducting of one's own business in such an unreasonable manner as will, under all the circumstances, unfairly cause real or material damages to another."

Plaintiff requested a charge evidently intended to correct and amplify the above instruction, which charge the court refused to give, and such refusal was approved by the Court of Civil Appeals.

In view of the conclusion we have reached upon the main and controlling issue, determination of the question whether or not the holding of the Court of Civil Appeals was correct is not necessary; therefore we forego any discussion of the assignment which presents it.

On return of the verdict of the jury the court entered judgment for defendant, which action was affirmed by the Court of Civil Appeals of the Fifth District. 196 S. W. 636.

There are presented in the record by proper assignments questions of practice relating to giving and refusing charges and the rejection of evidence, but our view as to the vital issue in the case makes discussion of such questions unnecessary.

In view of the holding of the trial court and the Court of Civil Appeals it becomes necessary to examine all the findings of the jury; as plaintiff in error contends that, construing all the answers of the jury together, he was entitled to judgment in his favor.

For the sake of brevity we will forego copying all the issues submitted, and content ourselves with a paraphrase of all the findings which have a material bearing upon the central and essential issue. Such paraphrase has been made after a most careful examination and re-examination of the issues and answers.

The jury found that Mustang branch was a natural waterway; that sewerage did collect and stand near plaintiff's house; that filthy stagnant water and offensive odors had been arising by reason of operation of the sewer system since 1913; that part of the stagnant water and offensive odors were caused by the operation of the plant, though it was found to be properly constructed and operated; that the stagnant water generated mosquitoes and drew flies to plaintiff's residence; that possibly 40 per cent. of the filth and sewage of the city would have reached to near plaintiff's residence had there been no sewer system (which was, in effect, to find that 60 per cent. reached near to it because of the system) ; that the construction and operation of the sewer system did not cause any of the sickness in plaintiff's family; that the condition of plaintiff's premises, irrespective of the sewage disposal plant "may have contributed to some extent" to the sickness of plaintiff's family; that the condition of plaintiff's premises, irrespective of the sewage disposal plant, did not cause or contribute to odors about plaintiff's place; that the condition created by the plant made plaintiff's place undesirable as a residence; and that his property was worth $10 an acre less with the sewer system established where it was than it would be if the system was not established and operated where it was.

[1] The inquiry logically next in order is, Did the findings of the jury, in legal effect, amount to a finding that the construction and operation of the sewerage system was a nuisance? But before proceeding to answer that question we deem it proper to say that we agree with the Court of Civil Appeals that the defense sought to be interposed that the work was of a public character and was necessary to be done, and, the plant having been constructed and operated properly, the plaintiff could not recover, but must bear the loss, was not maintainable.

The sewerage plant was not a "public" work in the sense that the city was not responsible for damages arising out of its erection or operation.

As was said by Chief Justice Gaines in White v. City of San Antonio, 94 Tex. 313, 60 S. W. 426:

"A municipal corporation proper—a city for example—acts in a twofold capacity. Certain functions are conferred upon it in the interest of the public at large and certain others for the peculiar advantage of its own inhabitants. For the unlawful acts of its officers in performing functions of the former class, the corporation is held, as a rule, not to be responsible; but for their torts in discharging duties of a purely corporate character, the corporation is liable."

If the sewerage plant could not be constructed and operated, however compelling the necessity for it, without doing injury to the property of a citizen, then the city, the aggregate of the citizenship, must stand the loss; and the city is bound in law to compensate the citizen for the damage he has suffered by reason of the premises. This is the law of Texas, as it should be. G. C. & S. F., etc., v. Eddins, 60 Tex. 656; G. C. & S. F., etc., v. Fuller, 63 Tex. 467; G. H. & W., etc., v. Hall, 78 Tex. 169, 14 S. W. 259, 9 L. R. A. 298, 22 Am. St. Rep. 42; White v. San Antonio, 94 Tex. 313, 60 S. W. 426; Ostrom v. San Antonio, 94 Tex. 523, 62 S. W. 909; Ft. Worth, etc., v. City of Ft. Worth, 106 Tex. 148, 158 S. W. 164, 48 L. R. A. (N. S.) 994.

[2] The Constitution of Texas and the decisions of her courts reveal a zealous regard for the rights of the individual citizen. Not only will they not permit his property to be

"taken" for a public use without compensation, but will not permit it to be damaged unless the citizen is compensated to the extent of such damage. To hold otherwise would be to put upon one citizen a burden which should rest upon the aggregate citizenship, as the direct beneficiary of the public work, the construction and operation of which has damaged the property of one citizen. That great law writer, Mr. Sedgwick, who, in the course of a criticism of the holding of a court of the state of New York in a case similar to the instant case, on the ground that the holding was narrow and technical, said: "The tendency of our legislation in matters of public improvement is undoubtedly to sacrifice the individual to the community."

We return now to consideration of the question, Were the findings of the jury, as above summarized, equivalent to finding the existence of a nuisance?

The case of Burditt v. Swenson, 17 Tex. 489, 67 Am. Dec. 665, was decided in 1856, and the law as therein laid down has been consistently adhered to, and the case has been often cited in the reports of this state and of other states, and by text-writers.

[3] It is held in that case that anything that worketh hurt, inconvenience, or damage, or which is done to the hurt of the lands, tenements, or hereditaments of another, is a nuisance. If one does an act within itself lawful, which being done in that place necessarily tends to damage another's property, it is a nuisance.

It is not necessary that the annoyance should endanger health; it is sufficient if it occasion that which is offensive to the senses, and which renders the enjoyment of life and property uncomfortable.

It is well said by Mr. Blackstone that to so hold the law in favor of the citizen is to "closely enforce that exalted rule of gospel morality of doing unto others as we would have them do unto us."

The wholesome and salutary rules of law laid down by a great court are in no wise impaired or lessened in controlling force by reason of the fact they are applied in the instant case to a corporate and artificial person, and not to a natural person.

[4] Tested by these rules, two things are evident: First, that the definition of a "nuisance," prepared and requested by counsel for defendant, and given by the trial court, was too narrow and did not meet the necessities of the situation; second, that the facts found by the jury showed beyond doubt or question that the construction and operation of the plant complained of was, as related to plaintiff, a "nuisance."

[5] In thus stating our conception of the law, we have not lost sight of the answer of the jury to the fourteenth special issue, to the effect that they did not believe the con-

223 S.W.—12

struction and operation of the plant constituted a nuisance.

That question was immaterial, because answers to the preceding questions would have been, as they proved to be, all-sufficient as a basis for judicial action.

While the jury in duty bound answered the question, their answer became of no value in view of preceding and succeeding questions, and should have been ignored. It was not a finding of fact, but an expression of opinion on the legal effect of the facts found.

When the law, as old as the hornbooks, is applied to a number of the other answers above summarized, it is manifest that the plant as it was constructed and operated was, as regarded plaintiff, a nuisance, and no single contradictory answer, or any number of such answers, could lessen the force or change the legal effect of the previous findings.

The situation is exactly the same as if a court were permitted to, and did, ask a jury if it found beyond a reasonable doubt that the defendant, in pursuance of a deliberately conceived design, and under such circumstances and in such a state of mind as to constitute "express malice," killed the deceased, and the jury were to answer in the affirmative, and were then, in response to the question whether they found the killing was murder in the first degree, to answer, "We believe not."

Under such circumstances, the latter inquiry would be immaterial and useless and the answer have no legal value.

The answers preceding that made to the fourteenth issue made it clear as a matter of law that the acts complained of were a nuisance, and the court should have ignored all other issues and answers, and have so declared.

[6] Thus far we have not referred to or discussed the finding of the jury that the property of the plaintiff was reduced in value by the construction and operation of the sewerage system to the extent of $1,750.

In our judgment, if the jury had answered no issue but that, such answer would have required judgment for plaintiff.

It was "damaged" to the extent of $1,750, therefore was "injured" to that extent, since "damaged" and "injured," in the sense of the Constitution, are synonymous and convertible terms. G., C. & S. F. Ry. v. Fuller, 63 Tex. 470; G., H. & W. Ry. v. Hall, 78 Tex. 172, 14 S. W. 259, 9 L. R. A. 298, 22 Am. St. Rep. 42.

To the extent of $1,750 the result was the same as if property had been destroyed. G., C. & S. F., etc., v. Eddins, 60 Tex. 667.

To all practical and legal intents and purposes, the plaintiff's property, to the extent of $1,750, was "taken." Yet he was denied compensation.

In Sinnickson v. Johnson, 17 N. J. Law,

129, 34 Am. Dec. 184, it was held that the overflowing of land by forcing water on it was equivalent to "taking."

Mr. Angell, in his work on Water Courses, says that a serious interruption to the common and necessary use of property is equivalent to the taking of it. In Pumpelly v. G. & M. Canal, etc., 13 Wall. 166, 20 L. Ed. 561, that great jurist, Justice Miller, said:

"Where real estate is actually invaded * * * so as to effectually destroy or impair its usefulness, it is a 'taking,' within the meaning of the Constitution."

[7] We recognize and are always prepared to enforce the statutory rule that the finding of the Court of Civil Appeals as to questions of fact are binding on this court; but that rule is applicable and binding only as to issues which are clearly found, and finding upon which is material and controlling in the decision of the case.

In our judgment special issue No. 14 should not have been submitted to the jury at all. Whether the answers of the jury to other relevant issues did or did not reveal the existence of a "nuisance" was a question which it was the exclusive province of the court to decide, and the facts imperatively demanded that he should answer in the affirmative.

High authorities hold that the question of what does or does not constitute a nuisance is purely a question of law, and cannot be submitted to a jury. Susquehanna, etc., v. Malone, 73 Md. 268, 20 Atl. 900, 9 L. R. A. 737, 25 Am. St. Rep. 595; Frost v. Berkeley, etc., 42 S. C. 402, 20 S. E. 280, 26 L. R. A. 693, 46 Am. St. Rep. 736.

The holding above set forth as to what constitutes a nuisance is abundantly sustained by the authorities of this and many other states. Cumberland, etc., v. Baugh, 151 Ky. 641, 152 S. W. 565, 43 L. R. A. (N. S.) 1039, Ann. Cas. 1915A, 130.

[8] That a city is held to the same measure of liability as is a natural citizen is settled by City of Sherman v. Laugham, 13 S. W. 1042; San Antonio v. Mackey, 14 Tex. Civ. App. 210, 36 S. W. 760; City of Coleman v. Price, 54 Tex. Civ. App. 39, 117 S. W. 905; City of Paris v. Jenkins, 57 Tex. Civ. App. 383, 122 S. W. 411.

In his great work on Municipal Corporations Judge Dillon says:

"A municipal corporation has no more right to license or maintain a nuisance than an individual would have, and the injured party has the right to maintain his action whether the city was guilty of negligence or not."

The unchallenged findings on other issues made the answer to No. 14 wholly immaterial. These findings, as we have said, made it clear as a matter of law that the thing complained of constituted a nuisance.

That the plaintiff by reason thereof suffered material injury to his property is practically undisputed. This being true, had the answer to issue No. 14, been unqualifiedly in the affirmative it could have added no force or weight to the answers to other issue equally as controlling, and, being in the negative, could not destroy, lessen, or impair their legal effect.

In view of the above findings, the question is presented as to what disposition should be made of the case by this court.

We have the view of the Supreme Court as follows:

"Under the contradictory findings of the jury there was no warrant for rendering judgment against the plaintiff in the trial court. But this same condition, we think, precludes the rendition of judgment in his favor here. The jury found such facts as would constitute the operation of the defendant's plant a nuisance. At the same time, however, under an incorrect definition in the court's charge of a nuisance, it found its operation not to be a nuisance.

"Since it was essential to the plaintiff's case that the operation constitute a nuisance, with these contradictory findings on the question, we believe it best that the case be remanded for another trial according to the rules laid down in Sherman Gas & Electric Co. v. Belden, 103 Tex. 59 [123 S. W. 119, 27 L. R. A. (N. S.) 237]."

We therefore recommend that the judgments of the district court and of the Court of Civil Appeals be reversed, and the cause remanded to the district court to be proceeded with in accordance with this opinion.

PHILLIPS, C. J. [9] The judgments of the district court and Court of Civil Appeals are reversed for the reasons stated by us in our returning the case to the Commission of Appeals on its original report and quoted in the foregoing opinion. The case is remanded for further trial in accordance with the rules announced in Sherman Gas & Electric Co. v. Belden, 103 Tex. 59, 123 S. W. 119, 27 L. R. A. (N. S.) 237.