**L–M–S INC. et al. v. BLACKWELL et al.**

**No. 2897.**

Court of Civil Appeals of Texas. Waco.

Feb. 23, 1950.

Rehearing Denied March 17, 1950.

Carrington, Gowan, Johnson & Walker, Dallas, for appellants.

H. Louis Nichols, Dallas, for appellees.

HALE, Justice.

Appellees, Blackwell and Baker, sued appellants, L-M-S Inc., a corporation, and W. C. Henger, operating as Henger Construction Company, for damage to their business in the nature of lost profits. They alleged that their loss had resulted from the conduct of appellants in obstructing the sidewalk and a portion of the street adjacent to the premises where they were carrying on their business. The case was tried before a jury. After a verdict was returned on special issues the court rendered judgment for appellees in the sum of $4200.00.

The evidence in the case shows that L-M-S Inc. owns certain property situated in the business district of the City of Dallas, being known as 1709-1715 Commerce Street. In July of 1946 appellees acquired a renewal lease on the ground floor of the premises at 1715 Commerce Street for a period of five years at a rental of $800.00 per month. Appellees operated a night club in the leased premises which was known as the "Little Stork Club". In the fall of 1947 appellants secured from the Building Inspector of the City of Dallas a permit to erect a 15 story office building to be known as the Mercantile Securities Building on the premises situated from 1709 to 1713 Commerce Street. As an incident thereto permission was also granted appellants to erect and maintain certain barricades across the sidewalk and into Commerce Street during the construction of the proposed office building. Accordingly, in the late fall of 1947 appellants caused the following structures to be erected in front of the building site, viz: a solid board fence about seven feet in height was erected across the sidewalk immediately west of appellees' leased premises; a fence was erected in Commerce Street so as to block off approximately one-third of the street in front of the building site; and a steam boiler, an elevator and other kinds of machinery and building materials were placed in the street within such enclosure. The structures so erected by appellants were maintained and used by them continuously until the completion of the building in August of 1949.

In response to the special issues submitted, the jury found in substance that the fence and barricade erected and maintained by appellants impaired the view of appellees' building from persons traveling on Commerce Street, interferred with the

safety and accessibility with which the public could get to the Little Stork Club and diverted travel and trade away from appellees' place of business; that appellees have suffered financial loss as a direct and proximate result of the erection and maintenance of the fence and obstructions; that the structures erected and maintained by appellants did not constitute an unreasonable obstruction of said public street and sidewalk, in the light of the surrounding circumstances; that the erection and maintenance of the barricade and the construction of the Mercantile Securities Building materially interfered with the use of the property occupied by appellees for the purposes for which it was leased to them and that such interference proximately caused appellees to suffer damage, although neither the barricade nor the construction work rendered the premises leased by appellees unusable for the purposes for which they were leased; that appellees abandoned the leased premises because of the action of L-M-S Inc. in erecting and maintaining the obstructions and barricades of which complaint was made; and that appellees had been damaged by loss of net profits from the operation of their business as a direct and proximate result of the construction and maintenance of the barricades between December 1, 1947 and August 1, 1949 in the sum of $4200.00.

Appellants say the judgment of the trial court should be reversed and judgment should be here rendered discharging them from any liability on account of the loss sustained by appellees because (1) the jury found that their action in erecting and maintaining the obstructions complained of was not unreasonable in the light of the surrounding circumstances and thereby acquitted appellants of any actionable wrong and (2) the obstructions complained of were not wrongful in that appellants in maintaining the same acted reasonably and pursuant to lawful and valid permits obtained from the City of Dallas. They contend that they are not legally liable for any damages that might have resulted from their reasonable and lawful use of the abutting sidewalk and street area for the purpose of constructing a building on their premises. In support of their contention they cite the following Texas cases: American Construction Co. et al. v. Seelig, Tex.Civ.App., 131 S.W. 655; Id., 104 Tex. 16, 133 S.W. 429; American Construction Co. v. Caswell et al., Tex.Civ.App., 141 S.W. 1013 er. ref.; American Construction Co. v. Davis, Tex.Civ.App., 141 S.W. 1019 er. ref. We do not think the holdings in the cited cases sustain the contention here urged or that such holdings, are of controlling effect in their application to the record facts in the case now before us.

■ The Constitution of Texas provides in Art. I, Sec. 17, Vernon's Ann.St., that no person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person. As held by the Supreme Court of Texas in the case of Powell v. Houston & T. C. R. Co., 104 Tex. 219, 135 S.W. 1153, 46 L.R.A., N.S., 1615, the ownership of a lot or of a leasehold interest in a lot abutting upon a public street carries with it as property the right of unimpaired access and egress therefrom and whatever impairs that right and causes a depreciation in the value thereof constitutes *damage* within the meaning of the Constitution. O'Brien v. Central Iron & Steel Co., 158 Ind. 218, 63 N.E. 302, 57 L.R.A. 508, 92 Am.St.Rep. 305; G. C. & S. F. R. R. Co. v. Fuller, 63 Tex. 467.

■ The Charter of the City of Dallas provides in Section 151 as follows: "The Governing Body of the city shall have the power, by ordinance or resolution, to grant to any owner of property abutting upon the streets or other property of the city the use thereof or to go over or under the same in any manner which may be necessary or proper to the enjoyment of said abutting property by the owner; provided, that such use be not inconsistent with or does not unreasonably impair the public use to which said street or other public property may be dedicated." Hence, the power of the City of Dallas to grant appellants permission to erect and maintain the structures here complained of was limited to such use thereof as might not be inconsistent with or an unreasonable im-

pairment of the public use to which Commerce Street was dedicated.

If the structures erected and maintained by appellants in Commerce Street did in fact unreasonably impair the public use to which such street was dedicated then in that event appellees would have been entitled, had they seen fit to do so, to have had such structures removed and abated as a nuisance. Kalteyer v. Sullivan, 18 Tex.Civ.App. 488, 46 S.W. 288, (er. den.); American Construction Co. v. Seelig, Tex.Civ.App., 131 S.W. 655; Id., 104 Tex. 16, 133 S.W. 429. On the other hand, if such structures did not in fact constitute an unreasonable obstruction of the street in the light of the surrounding circumstances, then appellees were not entitled in equity to an abatement of such nuisance but were relegated to their legal remedy, if any, of recovering compensation for the special damage proximately caused by such obstruction. In either of these events, however, the intentional erection and maintenance of such structures by appellants constituted an injurious invasion of appellees' rights of property, even though the obstruction created thereby was not unreasonable under all the surrounding circumstances and was legally permissive under authority granted by the City of Dallas. The rights and liabilities of the parties were, it appears to us, somewhat analogous to the rights and liabilities involved in a lawful exercise of the powers of eminent domain in the sense that the permissive right of appellants to make reasonable use of the street was subject to a corresponding liability on their part to compensate appellees for the injury and damage proximately resulting from the invasion of appellees' property rights. The rights and liabilities thus arising are based in part upon considerations of the general welfare and of public and private expediency. But in our opinion no consideration of public or private necessity, welfare, safety or convenience can legally justify the injury and damage inflicted upon the property rights of appellees under the facts disclosed by this record without adequate compensation being made therefor. G. C. & S. F. R. R. Co. v. Eddins, 60 Tex. 656; G. C. & S. F. R. R. Co. v. Fuller, 63 Tex. 467; Hart Bros. v. Dallas County, Tex.Com.App., 279 S.W. 1111; Brewster v. City of Forney, Tex.Com.App., 223 S.W. 175; Fields Sewerage Co. v. Bishop, Tex.Civ.App., 30 S.W.2d 412 (er. ref); Trueheart v. Parker, Tex.Civ.App., 257 S.W. 640.

We are also of the opinion that the conduct of L-M-S Inc. in maintaining such structures was wrongful under the findings of the jury because the same constituted a continuing breach of the implied covenant on the part of the corporation as lessor for the quiet and peaceable enjoyment of the leased premises being held and occupied by appellees. 31 T.J. p. 414, Sec. 5; 27 T.J. p. 268, Sec. 152; Alford v. Thomas, Tex.Civ.App., 238 S.W. 270; Maple Terrace Apartment Co. v. Simpson, Tex.Civ.App., 22 S.W.2d 698; Nabors v. Johnson, Tex.Civ.App., 51 S.W.2d 1081; Ellison v. Charbonneau, Tex.Civ.App., 101 S.W.2d 310, (er. dis.); Winchester v. O'Brien, 266 Mass. 33, 164 N.E. 807, 64 A.L.R. 895; Blaustein v. Pincurs, 47 Mont. 202, 131 P. 1064, Ann.Cas.1915C, 405; McDowell v. Hyman, 117 Cal. 67, 48 P. 984.

Under other points in their brief appellants say the evidence was insufficient to show with that degree of certainty required by law that any loss of business profits suffered by appellees was proximately caused by the obstructions complained of or if so as to what portion of their loss was caused thereby. We cannot agree with this contention. There was evidence to the effect that appellees had been operating the Little Stork Club at the same location from 1945 until they went out of business in August of 1948 and that the amount of their net profits during the years of 1945 and 1946 was approximately $8000.00 for each year and their profit for 1947 was approximately $9000.00. There was evidence of the gross income and expenditures during each month from and including January of 1947 to August of 1948 from which it appears that the business was operating at a loss when it was closed. Various witnesses testified to their observations as to the manner in which the obstructions adversely affected the business of appellees. Although in the very nature of the circumstances the evidence did not show with

absolute certainty the exact amount of lost profits which were proximately caused by the obstructions complained of, we think the evidence as a whole was amply sufficient to sustain the findings of the jury on these issues and to show with reasonable certainty that the amount of such loss was not less than the sum of $4200.00. 13 T.J. pp. 214 et seq., Secs. 113 and 114; American Construction Co. v. Davis, Tex.Civ.App., 141 S.W. 1019 (er. ref.); Watson Co. v. Lone Star Service Station, Tex.Civ.App., 16 S.W.2d 151 (er. dis.); Southern Properties, Inc., v. Carpenter, Tex.Civ.App., 50 S.W.2d 876 (er. ref.); Texas & P. Ry. Co. v. Mercer, Tex.Com.App., 90 S.W.2d 557; Belcher v. Bullion, Tex.Civ.App., 121 S.W.2d 483.

By a counter point of error in their brief appellees say the trial court should have granted them judgment for the additional sum of $1066.66 against L-M-S Inc. because they claim the undisputed evidence shows they were entitled to the same under the terms of their lease contract. The evidence shows that appellees paid $1600.00 at the time the renewal lease was executed in July of 1946 to cover the last two monthly installments of rent to become due under the contract. However, we do not think appellees were entitled to an additional recovery of any part of the rentals thus prepaid because, among other reasons, it appears to us that the jury could and should have taken such prepayment of rentals into consideration in arriving at the amount of the damages sustained by appellees as lost net profits from the operation of their business. In connection with this issue the trial court instructed the jury as follows: "By 'net profits' is meant the gross amount received from the conduct of the business less all expenses for hire, purchase of merchandise, advertising, taxes, rents, and the like." To permit the additional recovery so claimed by appellees would in our opinion amount to a double recovery for the same item of expense and loss, contrary to law. Therefore, we overrule this contention of appellees.

Finding no error in the judgment appealed from the same is in all respects affirmed.