# Supreme Court of Texas

No. 21-1008

Gabriel Rodriguez and Irene Rodriguez,

*Petitioners,*

v.

City of Robinson, Texas,

*Respondent*

On Petition for Review from the
Court of Appeals for the Tenth District of Texas

JUSTICE BUSBY, joined by Justice Lehrmann, concurring in the denial of the petition for review.

The Rodriguez family sued the City of Robinson for inverse condemnation after the city's sewer system backed up repeatedly, damaging their home. I agree with the court of appeals' judgment that the Rodriguezes failed to allege a viable claim for inverse condemnation, and thus the city was entitled to dismissal on its plea to the jurisdiction. But not all of our precedents have been clear about the reasons why that conclusion is correct in this case. I write not to criticize the court of appeals, therefore, but to explain why it is important for courts hearing suits for property damage caused by public works to analyze two

questions separately: whether the government (1) engaged in affirmative conduct and (2) did so with the required intent.

"The protection of one's right to own property is said to be one of the most important purposes of government. That right has been described as fundamental, natural, inherent, inalienable, not derived from the legislature and as preexisting even constitutions." *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 140 (Tex. 1977). The Texas Constitution helps to ensure that government fulfills this purpose by providing a robust right to compensation—and waiver of immunity—if a person's property is "taken, damaged, or destroyed for or applied to public use." TEX. CONST. art. I, § 17(a); *see Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980).

"When the government takes private property without first paying for it, the owner may recover damages for inverse condemnation." *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 554 (Tex. 2004). The elements of a claim for inverse condemnation are that (1) the government intentionally performed certain acts (2) that resulted in taking, damaging, or destroying the property for, or applying it to, (3) public use. *See, e.g.*, *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001).

"[W]e have sought objective indicia of intent in particular contexts to determine whether property has been taken or damaged in furtherance of the public interest." *Gragg*, 151 S.W.3d at 555. This case presents one such context: the government's conduct is not itself a taking, damaging, or destruction of property, but a property owner alleges that the government is responsible for eventually causing such

harm. *See City of Dallas v. Jennings*, 142 S.W.3d 310, 313 (Tex. 2004). In that context, a property owner suing for such compensation must show that the government (1) engaged in an affirmative act or course of conduct that resulted in the taking, damaging, destruction, or application of property; and (2) did so with the necessary intent—that is, with knowledge that either (a) the conduct is causing identifiable harm or (b) specific property damage is substantially certain to result. *See Harris Cnty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 799-800 (Tex. 2016); *Jennings*, 142 S.W.3d at 314. These requirements ensure that the damage occurred for "public use" because the government was aware of the harm "and yet determine[d] that the benefit to the public outweigh[ed]" it. *Jennings*, 142 S.W.3d at 314; *see also Kerr*, 499 S.W.3d at 806-07. They also help to draw the line between negligence claims against the government—which are generally barred by immunity unless a waiver applies—and takings. *See Gragg*, 151 S.W.3d at 554.

A substantial body of this Court's precedent uses these requirements to distinguish cases in which a taking "results from either the construction of public works or their subsequent maintenance and operation" from cases in which the government's conduct is "mere negligence which eventually contributes to the destruction of property" but does not constitute a taking. *City of Tyler v. Likes*, 962 S.W.2d 489, 505 (Tex. 1997). Although I agree with the ultimate holding of the majority in the court of appeals that the allegations in this case fall into the latter category, analyzing the affirmative conduct and intent requirements separately points the way to the correct reason for that conclusion. I explain below what our precedent requires owners to

3

allege and ultimately prove in cases seeking compensation for property damage resulting from public works. In addition, I write to emphasize that courts should first identify the affirmative conduct in question (if any) before examining whether the government engaged in it with the required intent.

Less than ten years after our present Constitution was written, we held that the broadening of our Takings Clause to cover "damaged" property "was doubtless intended to meet all cases in which, even in the proper prosecution of a public work or purpose, the right or property of any person, in a pecuniary way, may be injuriously affected . . . or its use by the owner restricted by the public use to which it is wholly or partially applied." *Gulf, Colo. & Santa Fe Ry. v. Fuller*, 63 Tex. 467, 469 (1885); *see Gulf, Colo. & Santa Fe R.R. v. Eddins*, 60 Tex. 656, 661-63 (1884).[1] Thus, "[i]f by the construction of a railway or other public work an injury peculiar to a given property be inflicted upon it"—"that is, . . . an injury[] not suffered . . . only in common with other property or rights in the same community or section"—"then such property may be said to be damaged." *Fuller*, 63 Tex. at 470. And just a few years later, we observed that the Takings Clause "is sufficiently comprehensive to include damages resulting from the operation of public works, as well as those which are inflicted by their construction merely." *Gainesville, H. & W. R. Co. v. Hall*, 14 S.W. 259, 261 (Tex. 1890); *see also Likes*, 962 S.W.2d at 504-05.

---

[1] *See also Jim Olive Photography v. Univ. of Hous. Sys.*, 624 S.W.3d 764, 780-81 (Busby, J., concurring) (collecting cases); *Steele*, 603 S.W.2d at 790 (same).

4

These principles apply to government-owned as well as government-authorized public works, including those involving public water and sewer projects. To that end, we recognized over one hundred years ago that if a city "sewerage plant could not be constructed and operated, however compelling the necessity for it, without doing injury to the property of a citizen, then the city, the aggregate of the citizenship, must stand the loss . . . [and] compensate the citizen for the damage he has suffered." *Brewster v. City of Forney*, 223 S.W. 175, 176 (Tex. 1920). Damages recoverable under the Takings Clause may include, among other things, injury to the private property's physical condition as well as personal discomfort and annoyance to its occupants that rises to the level of a nuisance and therefore reduces the property's value. *City of Abilene v. Downs*, 367 S.W.2d 153, 158 (Tex. 1963); *Brewster*, 223 S.W. at 176-77.

Illustrating the application of these principles, we held in *Jennings* that a sewage backup into a home was not a compensable damaging of property. Although that backup resulted from the city's maintenance action in clearing a clogged sewer main, there was no intent evidence that the city knew when it unclogged the line that any flooding damage would occur or that unclogging backups ordinarily causes residential flooding. *Jennings*, 142 S.W.3d at 312, 315.

Similarly, we have explained that "the mere intentional operation of a sewer system is insufficient to support" a claim of inverse condemnation for a sewage backup. *City of Arlington v. State Farm Lloyds*, 145 S.W.3d 165, 168 (Tex. 2004). But the reason for this conclusion does not lie in the affirmative conduct requirement; the cases

5

just discussed demonstrate that dedicating resources to the construction or operation of an authorized public work can be a course of conduct that satisfies the requirement. Rather, the reason is that the intent requirement additionally demands allegations and ultimately proof that the government knows its conduct is causing—or is substantially certain to cause—identifiable damage. *See id.* (concluding "there was no evidence the City possessed such knowledge").

On the other hand, we held in *Gragg* that recurring flood damage to a ranch was compensable because it resulted from the "operation as intended" of a water district's reservoir upstream, which repeatedly opened its gates to release large volumes of water during periods of heavy rain due to its limited storage capacity. 151 S.W.3d at 555-56. We explained that "[i]n the case of flood-water impacts, recurrence is a probative factor in determining the extent of the taking and whether it is necessarily incident to authorized government activity, and therefore substantially certain to occur." *Id.* at 555.

Applying this precedent here shows that the Rodriguez petitioners did not plead a viable claim for inverse condemnation, though not for the reasons identified by the court of appeals. The Rodriguezes alleged that the city's sewer backed up into their home on two occasions due to stoppages in the city's line and that the city "failed to address the stoppage." They also alleged that their home had sewage backups on other occasions because the city "fail[ed] to construct and maintain its sewer system" to prevent them. The Rodriguezes' brief in this Court confirms that this is their theory: "lack of maintenance over the years by the City caused sewage to back up into [their] home." They

6

have not alleged that the operation of the city's sewer system as intended produces backups.

Because these allegations concern nonfeasance by the city in failing to clear stoppages and maintain the sewer system, they do not meet the first required element: an affirmative act or course of conduct that results in property damage. That is a sufficient basis on which to render judgment granting the city's plea to the jurisdiction and dismissing the Rodriguezes' claim for inverse condemnation, as the court of appeals did.

At one point in its opinion, the majority in the court of appeals appears to combine the affirmative conduct and intent requirements to conclude that the Rodriguezes "do not identify a specific, intentional, governmental act." No. 10-21-00075-CV, 2021 WL 4595743, at *4 (Tex. App.—Waco Oct. 6, 2021). But the court did not address the Rodriguezes' allegations regarding intent. They allege, for example, that the city "had actual knowledge at all times during the construction of the sewer system and maintenance thereof that [the Rodriguezes'] property would be severely damaged unless the situation was eliminated by [the city]." And they specifically allege that the city "has advised [the Rodriguezes] that it has been working to fix the sewer situation but has failed to do so."

These allegations certainly speak to the city's knowledge that specific property damage is substantially certain to result. Thus, the problem with the allegations is not that they fail "to show the requisite intent for a takings claim," as the majority suggested. *Id.* Rather, it is

7

that they are based on an alleged "situation" that does not meet the affirmative conduct requirement for the reasons I have described.

To avoid this sort of confusion, courts can begin their analysis of a claim for damage caused by public works with the affirmative conduct requirement: examining whether there are allegations of an affirmative act or course of conduct that resulted in property damage. If this requirement is not met, then the claim for inverse condemnation fails. If it is met, then the court can go on to consider the intent requirement: whether there are allegations that the government knows the affirmative act or conduct just identified is causing—or is substantially certain to cause—identifiable property damage.

Because the Rodriguezes failed to allege a claim for inverse condemnation at the first step, the court of appeals properly rendered judgment dismissing their claim. I therefore concur in the denial of their petition for review.

_____
J. Brett Busby
Justice

**OPINION FILED:** December 22, 2023